1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST ANDREWS LINKS LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>GILFIN INTERNATIONAL LIMITED, et al.,<br><br>Defendants. | Case No. 18-cv-02131-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS**<br><br>Re: Dkt. No. 57 |

## INTRODUCTION

Plaintiff St Andrews Links Limited (SAL), the business representing the famous golf course in St. Andrews, Scotland, moves to dismiss and has filed a special motion to strike counterclaims filed by defendants Gilfin International Limited, Gilfin International (Tapemate) Limited (collectively "Gilfin International"), Old St. Andrews Limited ("OSA") (all three collectively OSA) under California's Anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16). The counterclaims are barred as a matter of law under California's litigation privilege (Cal. Civ. Code § 47(b)) and by the *Noerr-Pennington* doctrine because they are made solely in response to SAL's filing its affirmative case against OSA. OSA has also failed to allege sufficient facts. For these reasons, SAL's motion to dismiss is granted and the special motion to strike is denied as moot.

## BACKGROUND

In its Second Amended Complaint, SAL asserts the following causes of action against OSA: (1) Unfair Competition and False Designation of Origin, under 15 U.S.C. §1125(a)(A) and (B); (2) California Unfair Competition, under Cal. Bus. & Prof. Code Sections 17200 *et seq*.; (3)

California False Advertising, under Cal. Bus. & Prof. Code Sections 17500 *et seq.*; (4)

Cancellation of U.S. Trademark Reg. No. 1,518,200, under 15 U.S.C. §§ 1052(a) and 1119, 15

U.S.C. §§ 1058(a) and (b) and 1119, and 15 U.S.C. §§ 1064(3) and 1119, seeking to cancel

Gilfin's Registration and renewal because of its misleading nature; and (5) damages for False

Registration, under 15 U.S.C. § 1120.[1]

     OSA answered the SAC and asserts various counterclaims against plaintiff.  It alleges that

as "early as 1987 and through today, the OSA Products have been sold in golf ball shaped bottles,

bearing a lion and golf club logo." CC ¶ 11.  "OSA has acquired and protected the rights

associated with the OSA Products and is the owner of U.S. Trademark Reg. No. 1,518,200,

covering OLD ST. ANDREWS for scotch whisky (OSA Mark)." *Id*. ¶ 12.  The "OSA Mark,

covered by the OSA Registration, was first used in U.S. commerce in connection with OSA

Products at least as early as October 1984." *Id*.  ¶13.  It also alleges that SAL has been aware of

OSA's consistent, lawful use, marketing, and promotion of the OSA Products for at least eight

years and that SAL began but abandoned a "litigious campaign" against OSA in 2010 and took

actions with the Trademark and Patent Office that "prompted office actions that disclosed or

referenced OSA's OSA Registration." *Id*. ¶¶ 14-17.   OSA claims that after "sitting on its rights

for years, SAL has attempted to interfere and disrupt OSA's contractual relations with its

distributors and business partners, including OSA's U.S. distributor Niche Import Company

("Niche"), by filing the instant action," and that SAL "is fully aware that its claims have no

evidentiary, factual or legal basis whatsoever, and are time-barred" but has pursued this case to

cause OSA's customers to cease selling OSA products. *Id*. ¶¶ 18-19.

     Based on these allegations, OSA asserted the following counterclaims: (1) intentional

interference with contractual relations; (2) intentional interference with prospective economic

advantage; (3) cancellation of the SAL's registrations; (4) unfair competition; and (5) unfair

competition under Section 17200.  SAL's motions to dismiss and strike followed.[2]

---

[1] The two other defendants named in this suit Niche and Epic, who were alleged to have been
distributors or business partners of OSA, were dismissed without prejudice on June 26, 2019

[2] SAL does not move to dismiss or strike OSA's Third (III) Counterclaim, which seeks a

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**DISCUSSION**

**I.    TORT CLAIMS AND PRIVILEGE**

SAL first moves to dismiss OSA's California tort claims (the two interference claims and the unfair competition claims) because they are barred – as they are based only on conduct SAL has taken in *this* litigation – under two doctrines: (1) California's litigation privilege, Cal. Civ. Code § 47(b); and (2) the *Noerr-Pennington* doctrine.

California Civil Code section 47(b) protects communications made in the context of a

---

declaration of non-violation of 15 U.S.C. §§ 1125(a)(A) & (B).

judicial proceeding. Cal. Civ. Code § 47. "The principal purpose of section 47(b)(2) is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990), *as modified* (Mar. 12, 1990) (internal citation omitted).

The *Noerr-Pennington* doctrine "shields lobbying and litigation activity" and serves as "immunity from liability, not from trial."[3] *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1140 (9th Cir. 2013). The activity is only shielded as long as it was not a "sham." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991). "The 'sham' exception to *Noerr* encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* (emphasis in original). The sham litigation exception does not apply so long as the party "was genuinely seeking governmental action." *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (citing *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1081 (9th Cir. 1976)).

To be considered a sham, the lawsuit must be (1) objectively baseless and (2) brought with an unlawful motive. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (*PRE*); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006). Litigation is objectively baseless if "no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60. Litigation is brought with an unlawful motive if it "conceals an attempt to interfere *directly* with the business relationships of a competitor." *Id.* at 60–61 (internal citation omitted, emphasis in original). Where claims are based on activities shielded by *Noerr-Pennington* immunity, the plaintiff must plead the sham litigation exception with specificity. *Oregon Nat. Res.*, 944 F.2d at 534–35; *see also Formula One Licensing v. Purple Interactive*, No. C 00-2222 MMC, 2001 WL 34792530, at *2 (N.D. Cal. Feb. 6, 2001) (dismissing claims with leave to amend where the sham pleadings alleged only a "meritless trademark infringement

---

[3] The doctrine was originally limited to the antitrust context but now applies more broadly. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (intentional interference claims); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C 04-2000 CW, 2007 WL 801886, at *4 (N.D. Cal. Mar. 14, 2007) (UCL claims).

action . . . alleging the infringement of unenforceable, generic marks").

SAL contends that the tort counterclaims asserted against it are barred under these doctrines because they are based solely on the filing of this lawsuit, which is privileged conduct. SAL points to paragraphs 18 and 19 of the counterclaims where OSA alleges that SAL has attempted to "interfere and disrupt" OSA's relations with its distributors and business partners "by filing the instant lawsuit" which has "caused" Niche and Epic (the former co-defendants) to cease selling OSA products. CC ¶¶18-19. SAL cites a number of decisions applying both the California litigation privilege and *Noerr-Pennington* to dismiss intentional interference claims and unfair competition claims like the ones asserted here. Mot. [Dkt. No. 57] at 8-10.

In Opposition, OSA does not dispute or distinguish those cases. Instead, it argues that *Noerr-Pennington* does not apply because SAL's suit is a baseless "sham" and part of a "pattern" of harassment that creates exceptions to the application of the doctrine. To contend that the SAL suit is objectively baseless, OSA relies *only* on its defenses to SAL's trademark claims (that SAL sat on its rights and its affirmative claims are time-barred). OSA does not provide any authority or other support to demonstrate that these defenses make SAL's suit baseless *as a matter of law*. This is not, on its face, either a well-pleaded or adequately supported sham allegation.

OSA then argues that the "pattern" exception to *Noerr-Pennington* applies. That exception is invoked where "the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006). However, there are no allegations in the counterclaims that make this exception plausible. While there is a passing reference to the fact that in 2010 or 2011 "SAL began an unsuccessful litigious campaign against OSA that it later withdrew," CC ¶ 15, there are no facts alleged concerning the nature of that campaign, whether it included a series of lawsuits, and whether they were filed for an unlawful purpose.

While OSA is correct that the applicability of the sham and pattern exceptions should not be resolved on a motion to dismiss when the court "cannot rule out the possibility" that the litigation might be a sham, *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1037 (C.D. Cal. 2007), there are no plausible facts alleged in the current counterclaims (or persuasive

authority provided on this motion) to make those exceptions even facially applicable.

OSA also notes in its Opposition that non-litigation conduct, including harassment and threats to customers, are not encompassed within *Noerr-Pennington's* protections. However, no non-litigation statements or conduct have been alleged in the counterclaims nor have any evidence of threats or harassment been identified. The only acts identified are the filing of this suit and then the subsequent dismissal of Epic and Niche.

Finally, OSA argues that California's litigation privilege does not bar its tort claims because it is an inherently factual determination whether SAL's communications to OSA's business partners were made in "good faith" and under serious consideration of litigation. But there are no facts alleged about any communications made by SAL that would implicate the good faith standard. The only conduct alleged (again) is the filing of this suit and the subsequent dismissal without prejudice of Niche and Epic. All of that conduct on its face is directly connected with this suit and there are no plausible facts alleged that this case was filed in bad faith or for an improper purpose.

SAL's request for dismissal of these claims with prejudice, however, is not warranted. OSA may be able to cure these deficiencies and make factual and legal assertions showing the facial applicability of the two identified *Noerr-Pennington* exceptions to save the tort claims. Therefore, DISMISSAL of Claims 1, II, and IV, and V is GRANTED with leave to amend.

## II.     FAILURE TO STATE CLAIMS

SAL also argues that OSA fails to adequately allege its claims. As I have dismissed the California tort claims with leave, I need not reach this argument concerning those claims. However, if OSA decides to amend those claims, it should consider identifying wrongful conduct (other than filing this lawsuit) in support of the interference and unlawful competition claims. To the extent OSA bases any claim on alleged misrepresentations by SAL, it should identify those representations consistent with Rule 9(b)'s heightened specificity requirements.

SAL argues that OSA's claim for cancellation of SAL's registrations is deficient because OSA does not identify which of SAL's registrations it seeks cancellation of or why those marks should be cancelled. In response, OSA argues that because SAL has not been clear regarding

which of its many registrations it is asserting, OSA's claim limiting cancellation to "the trademarks asserted by SAL" is sufficient.  CC ¶ 40.  Yet OSA does not identify any *facts* in support of why those many registrations should be cancelled.  This claim, too, is DISMISSED with leave to amend.

### III.     ANTI-SLAPP

Finally, SAL moves to strike the state law tortious interference claims and the unfair business claims under California's Anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16) arguing that the conduct underlying those claims is "protected activity" under the statute because the only conduct complained of by OSA is the filing of SAL's lawsuit and statements made in connection with SAL's lawsuit.  Given this, the burden to defeat the anti-SLAPP motion falls to OSA to establish a likelihood of prevailing on the merits which – as shown above – it has not done.

However, as I am dismissing the state law claims with leave to amend, I need not reach the anti-SLAPP special motion to strike.  It may be renewed if SAL moves to strike any amended claims.

### CONCLUSION

SAL's motion to dismiss is GRANTED as to the state law tort counterclaims and the counterclaim for cancellation of SAL's registrations WITH LEAVE TO AMEND.  SAL's special motion to strike is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: September 5, 2019

William H. Orrick
United States District Judge